JS-6

CC: BK Court

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

IN RE:

CHRISTOPHER A. EBERTS

CASE NO. CV 12-08464-MWF

**ORDER REVERSING AND REMANDING IN PART AND AFFIRMING IN PART THE BANKRUPTCY COURT'S MOD AND JUDGMENT**

Appellant-Defendant Ronald Tutor and Appellant-Intervenor Kristin Eberts ("K. Eberts") have filed this bankruptcy appeal from the following:  (1) the Memorandum of Decision After Trial filed and entered on July 11, 2012; (2) the Judgment filed and entered on July 11, 2012; and (3) the Order Denying Motion to Alter or Amend Judgment (collectively, the "MOD and Judgment").  (*See* Notice of Appeal at 2 & Exs. A-C (Docket No. 2)).  The Court has read and considered the papers filed on this appeal and held a hearing on July 1, 2013.

Creditor and Appellee-Defendant R.F.F. Family Partnership ("RFF") seeks to recover on loans to Debtor Christopher Eberts ("C. Eberts"), the husband of K. Eberts.  This appeal involves the validity and priority of RFF's security interest in the marital home, which is the only means of recovery.  The ownership interest in the home is complicated, in part due to the actions of the parties.

1

This Court affirms in part and reverses in part.  The Court need not reach the *Stern v. Marshall* issue concerning whether the Bankruptcy Court could enter judgment; the review in this Court would be *de novo* regardless whether it reviewed a judgment or a report and recommendation.  This Court does reverse and remand in regard to two issues:  (1) the existence or extent of a community property interest in the bankruptcy estate, pursuant to the *Moore/Marsden* rule and/or the *In re Marriage of Neal* presumption; (2) whether Mr. Tutor is entitled to equitable subrogation on the basis of a moral obligation; and (3) resolution of factual issues related to K. Eberts's alleged equitable rights.  *See, e.g.*, *In re Landmark Fence Co., Inc.*, No. ED CV12-01582 AHM, 2013 WL 866257, at *10 (affirming in part and reversing and remanding in part the bankruptcy court's decision).

## I. <u>PROCEDURAL BACKGROUND</u>

On February 13-14, March 14-15 and April 23, 2012, the Bankruptcy Court for the Central District of California (the Honorable Ernest M. Robles) conducted a trial in this adversary proceeding regarding the validity and priority of certain of RFF's promissory notes, deeds of trust and powers of attorney.  (Excerpts of Record ("ER") 2).  The parties sought a determination of various' parties rights to real property located at 11496 Orum Road, Los Angeles, California (the "Orum Property").  (*Id.*)

On July 11, 2012, the Bankruptcy Court ruled that RFF had a lien against Debtor Christopher A. Eberts's ("C. Eberts") one-half joint tenancy interest in the Orum Property based on the so-called "10/10/07 Deed" (discussed below), in the amount of $5,028,479.50 as of January 30, 2012.  (ER 42).

On September 26, 2012, the Bankruptcy Court denied the Motion to Alter or Amend Judgment filed by Mr. Tutor and K. Eberts.  (ER 45-46).  Mr. Tutor and K. Eberts had argued that, under *Stern v. Marshall*, -- U.S. --, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), the Bankruptcy Court could not issue final judgment in the

adversary proceeding and instead only could issue to this Court a report and recommendation of proposed findings of fact and conclusions of law. (ER 49-50).

On September 28, 2012, Mr. Tutor and K. Eberts filed a timely notice of appeal. (Docket No. 2). This appeal raises four questions for review. Specifically,

1. Whether the Bankruptcy Court should have issued a report and recommendation of proposed findings of fact and conclusions of law rather than a final judgment.

2. Whether the Orum Property, or a partial interest therein, was community property belonging to both K. and C. Eberts.

3. Whether Mr. Tutor is entitled to subrogation rights against the Orum Property.

4. Whether K. Eberts is entitled to subrogation or contribution rights against the Orum Property.

(Appellants' Opening Br. at 9-10 (Docket No. 18)).

## II. <u>FACTUAL BACKGROUND</u>

By now, the facts are well known to the parties and the Bankruptcy Court. Here, the Court only briefly summarizes the facts relevant to this appeal, relying on the Bankruptcy Court's post-trial Memorandum of Decision and the parties' own briefing on this appeal.

Mr. Tutor is K. Eberts's father. (ER 3). Mr. Tutor and K. Eberts originally acquired the Orum Property. (ER 4). Mr. Tutor subsequently transferred his interest in the Orum Property to K. Eberts, who then transferred the Orum Property to herself and her husband, C. Eberts. (*Id.*) K. and C. Eberts held title to the Orum Property as "husband and wife, as joint tenants." (*Id.*)

RFF holds a deed of trust against the Orum Property dated October 10, 2007 – *i.e.*, the 10/10/07 Deed. (ER 3). RFF claims that the 10/10/07 Deed secures two promissory notes. (*Id.*) Significantly, K. Eberts did not sign the 10/10/07 Deed.

1    (*Id.*)  The sole issues on this appeal are the validity and priority of RFF's interest in

2    the Orum Property.  (ER 4).

3         Prior to October 10, 2007, Washington Mutual Bank held a lien against the

4    Orum Property (the "WAMU lien"); in addition, an individual named David

5    Solesbee and a related entity known as Heaven's Bistro held judgment liens against

6    the Orum Property (the "Solesbee liens").  (ER 3).

7         On December 21, 2007, K. and C. Eberts executed a "Postnuptial

8    Agreement."  (ER 9).  Under this Postnuptial Agreement, C. Eberts transferred and

9    conveyed "all rights, title and interest in the [Orum Property], its fixtures and

10   furnishings" to K. Eberts as her "separate property."  (ER 2958).

11        Then, in 2008, Mr. Tutor paid (or loaned K. Eberts) more than $5.9 million to

12   satisfy the WAMU and Solesbee liens.  (*Id.*)  On these facts, Mr. Tutor argues, he

13   should be deemed to have a security interest against the Orum Property with the

14   same priority as the WAMU and Solesbee liens – and consequently senior to RFF's

15   10/10/07 Deed – based on equitable subrogation.  (*Id.*)

16        On the same facts, K. Eberts argues that ***she*** should be equitably subrogated

17   to the senior position of the WAMU and Solesbee liens – *i.e.*, because she paid off

18   these liens with funds borrowed from Mr. Tutor.  Alternatively, K. Eberts argues

19   that C. Eberts's interest in the Orum Property was subject to her contribution rights

20   based on these payments.  (ER 12).

21        In 2009, Mr. Tutor and K. Eberts executed a promissory note (the "Tutor/K.

22   Eberts Note").  (ER 2993).  The Tutor/K. Eberts purports to include the "loan

23   advances" Mr. Tutor made to K. Eberts in order to satisfy the WAMU and Solesbee

24   liens.  (*Id.*)  The Tutor/K. Eberts Note also purports to give Mr. Tutor a security

25   interest in the Orum Property.  (*Id.*)

26        To summarize, the Court understands the relevant facts to be the following:

27           • March 19, 2007:  K. Eberts transferred Orum Property to herself and C.

28              Eberts "as joint tenants, as husband and wife."

1      • March 19, 2007–December 21, 2007:  Orum Property held by K. and

2          C. Eberts as husband and wife, as joint tenants.  Eberts marital

3          community takes a (perhaps partial, perhaps "entire") interest under

4          *Moore/Marsden* rule and its progeny; or, Orum Property was

5          community property under *In re Marriage of Neal* presumption.

6      • March 21, 2007:  The WAMU lien attached against the Orum Property.

7          (ER 13).

8      • September 11, 2007:  The Solesbee liens attached against Orum

9          Property.  (*Id.*)

10     • October 10, 2007:  The RFF lien attached against Orum Property.

11     • December 21, 2007:  K. and C. Eberts execute Postnuptial Agreement;

12         Orum Property became separate property of K. Eberts.

13     • January 2, 2008:  Mr. Tutor paid off (or loaned K. Eberts funds to pay

14         off) the Solesbee liens.

15     • April 24, 2008:  Mr. Tutor paid off (or loaned K. Eberts funds to pay

16         off) the WAMU lien.

17     • February 3, 2009:  Mr. Tutor and K. Eberts executed the Tutor/K.

18         Eberts Note.

19                    **III.  <u>STANDARD OF REVIEW</u>**

20         A bankruptcy court's conclusions of law are reviewed de novo and findings

21     of fact are reviewed for clear error.  *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.*, 503

22     F.3d 933, 940 (9th Cir. 2007) (citing cases).

23                       **IV.  <u>DISCUSSION</u>**

24     **A.    <u>The Court Need Not Rule on the Procedural Issue Under *Stern v.***</u>

25         <u>***Marshall.***</u>

26         The Court recognizes the evolving state of the law under *Stern v. Marshall*.

27     *See, e.g.*, *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 565-66 (9th Cir. 2011)

28     (concluding that in certain cases the bankruptcy court's "power to enter final

                                    5

judgment is abrogated") (discussing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S. Ct. 2782, 106 L. Ed. 2d 26 (1989), and *Stern v. Marshall*).  In this case, however, the Court need not reach this procedural issue.

Practically speaking, Mr. Tutor and K. Eberts have asserted no error in this regard.  Instead, they argue that this Court should treat the Bankruptcy Court's MOD and Judgment as a report and recommendation of proposed findings of fact and conclusions of law.  (Appellants' Reply Br. at 8 (Docket No. 24)).

According to their own argument, however, "regardless of whether the Bankruptcy Court was required to issue findings and conclusions to this Court or instead a judgment, both are subject to de novo review."  (Appellants' Opening Br. at 15).

Indeed, with respect to the substantive merits issues discussed below, Mr. Tutor and K. Eberts assert errors of law.  Accordingly, the Court concludes that these alleged errors are subject to de novo review and need not reach the procedural issues arguably implicated under *Stern v. Marshall*.

At the hearing, counsel for Appellants argued that the de novo standard differs with respect to the Bankruptcy Court's factual findings depending on whether *Stern v. Marshall* applies.  The Court does not reach this issue.  As discussed below, the issues presented are legal issues that would be reviewed de novo under either standard.

At the hearing, Appellants' counsel also suggested that the Bankruptcy Court was without jurisdiction even to hear the trial in this matter.  The parties have not briefed this issue, and the Court does not reach it here.

Accordingly, the Bankruptcy Court's MOD and Judgment are AFFIRMED on this basis.

**B.** __The Eberts Marital Community Had, at Least, a Partial Interest in the Orum Property as of October 10, 2007.__

The parties agree that, to the extent that the Orum Property was community property, C. Eberts could not have encumbered the Orum Property acting alone. (ER 16).  Because K. Eberts did not sign the 10/10/07 Deed, the determinative question is whether the Eberts marital community had any interest in the Orum Property as of October 10, 2007.  (*Id.*)

The Bankruptcy Court concluded that the Orum Property was held as separate property in joint tenancy between K. and C. Eberts, and consequently that the 10/10/07 Deed attached to C. Eberts's one-half interest in the Orum Property.  (*Id.*) The Bankruptcy Court relied on the Ninth Circuit's decision in *In re Summers*, 332 F.3d 1240 (9th Cir. 2003):

> . . . [A]bsent a contrary statute, and unless ownership interests are otherwise established by sufficient proof, record title is usually determinative of characterization.  In California, the community property presumption is overcome when a declaration in a deed or other title instrument indicates spouses take title to property as joint tenants. Where [t]he grant deed specifically states the property is joint tenancy property, this rebuts the community property presumption . . .  [T]he general community property presumption is rebutted by the affirmative act of specifying joint tenancy title in the deed.  Property taken in joint tenancy is presumed to be held as joint tenancy property, with each spouse owning an undivided one-half interest.  A declaration in a deed or other title instrument that the parties take the subject property as joint tenants raises a presumption that the married couple intended to take title in joint tenancy.
>
> There is therefore a rebuttable presumption that where the deed names the spouses as joint tenants . . . the property was in fact held in joint tenancy. . . .

*Id.* at 1243-44 (citations and internal quotation marks omitted); (*see also* ER 18-19).

The Bankruptcy Court noted that K. Eberts relied on language in *Summers* that "permits parties to present evidence to rebut the joint tenancy record title."  (ER

7

19).  The Bankruptcy Court also added that, "[w]hether a property is characterized as separate property or community property is determined at the time of its acquisition."  *Summers*, 332 F.3d at 1243 (citation and internal quotation marks omitted); (ER 19).

### 1.   The *Moore/Marsden* Rule

On this appeal, Mr. Tutor and K. Eberts do not dispute the general rule discussed above.  Instead they argue that, under the so-called "*Moore/Marsden* rule," the Eberts marital community acquired a partial interest (or the "entire interest") in the Orum Property because (1) community funds were used to make payments on the mortgage existing at the time of K. and C. Eberts' marriage; (2) the Orum Property later was refinanced during K. and C. Eberts' marriage and paid with community funds, and (3) community funds in excess of $2 million were used to make capital improvements to the Orum Property.  (ER 9; ER 27 ("K. Eberts contends that even if RFF's lien extends to Debtor's one-half interest in the [Orum] Property, the community acquired an interest in the [Orum] Property based on the[se] 'contributions.'")); *In re Marriage of Marsden*, 130 Cal. App. 3d 426, 436-37, 181 Cal. Rptr. 910 (1982) ("Where community funds are used to make payments on property purchased by one of the spouses before marriage the rule developed through decisions in California gives to the community a pro tanto community property interest in such property in the ratio that the payments on the purchase price with community funds bear to the payments made with separate funds." (citation and internal quotation marks omitted)) (quoting *In re Marriage of Moore*, 28 Cal. 3d 366, 371-72, 168 Cal. Rptr. 662 (1980)).

The Bankruptcy Court rejected this argument because the "cases relied on by K. Eberts . . . raised the issue regarding the community's interest in real property acquired before marriage within the context of dividing property in a dissolution proceeding."  (ER 28).  According to the Bankruptcy Court, "this dispute does not involve a marital dissolution.  Moreover, the foregoing cases do not hold that

1    community contributions are to be considered in determining the extent or validity

2    of a third party's lien against property jointly owned by spouses."  (*Id.*)

3         As a preliminary matter, *Summers* does not address the *Moore/Marsden* rule.

4    Nor does *Summers* involve the extent or validity of a third party's lien against

5    property jointly owned by spouses.  *See Summers*, 332 F.3d at 1242 ("[T]he trustee

6    in [the wife]'s bankruptcy case, contended that the subject property was a

7    community asset and, therefore, became property of [the wife]'s bankruptcy estate.

8    After a trial, the bankruptcy court ruled that the realty was held in joint tenancy.").

9         More importantly, the Bankruptcy Court did not cite any authority for the

10   proposition that the *Moore/Marsden* rule should be limited to dissolution

11   proceedings.  Nor, on this appeal, has RFF cited any authority for this proposition.

12   Tellingly, RFF does not even address this issue.

13        Surprisingly, it seems that the California courts have not articulated a clear

14   rule on whether the *Moore/Marsden* rule should apply vis-à-vis a third party

15   creditor.  However, there is some indication in this district that the rule should not

16   be so limited.  In *Edukere v. United States*, No. CV 05-4227 RT, 2008 WL 2824954

17   (C.D. Cal. July 21, 2008), the district court concluded that,

18
     >    Plaintiff Glory Edukere, a married woman, owns as her sole and
19   >    separate property that real property in the City of Pomona, County of
     >    Los Angeles, State of California . . . hereinafter "subject property."
20

21   >    Plaintiff Glory Edukere and Godwin Edukere [her husband] have
     >    **a pro tanto community property interest of an undetermined**
22   >    **percentage in subject property**; and

23   >    Defendant United States of America **as a judgment creditor of**
     >    **Godwin Edukere** has a valid lien pursuant to the judgment of restitution
24   >    in *United States v. Edukere*, CR 02-01273, on Godwin Edukere's
25   >    undivided one-half interest in **the community property interest in the**
     >    **subject property**.
26

27   *Id.* at *5 (emphasis added).

28

9

1    According to the district court, the "character of property as separate or

2    community is fixed as of the time it is acquired, and the character is so fixed *until it*

3    *is changed in some manner recognized by law*."  *Id.* at *2 (citations omitted)

4    (emphasis added).  "Generally, when community property is used to reduce the

5    principal balance on a promissory note secured by a deed of trust on a spouse's

6    separate property, the community obtains a pro tanto interest in the property

7    pursuant to the *Marsden/Moore* rule."  *Id.* at *4 (citations omitted).

8    In that case, the district court reasoned that Mr. and Mrs. Edukere "have a

9    community property interest in the property on a pro tanto basis in a ratio that the

10   payments towards the principal on the note secured by the property were and are

11   from community funds, *i.e.* Mrs. Edukere's earnings, compared to the payments

12   made with Mrs. Edukere's separate funds."  *Id.* at *4 (citing *Moore*) ("Absent

13   sufficient evidence by Plaintiff, having the burden of proof, the court is unable to

14   apply the *Moore/Marsden* rule and formula to determine the exact percentage pro

15   tanto interest the community has in the subject property.").

16   Finally, as it bears on this appeal, the district court stated that "[b]ecause

17   Defendant, judgment creditor of Godwin Edukere, has a judgment creditor lien on

18   Godwin Edukere's undivided one-half interest in *the pro tanto community property*

19   *interest*, it may initiate proceedings to execute on the judgment lien as to that

20   community property interest."  *Id.* at *5 (emphasis added).

21   *Edukere* is not binding on this Court but is instructive on this appeal.  In the

22   absence of any authority limiting the *Moore/Marsden* rule to dissolution

23   proceedings, this Court agrees with *Edukere*.  There is no reason that the

24   *Moore/Marsden* rule should not apply in the context of a third-party lien.

25   Furthermore, in the absence of specific findings of fact in this respect, the

26   Court is unable to apply the *Moore/Marsden* rule and formula to determine the exact

27   percentage pro tanto interest that the Eberts marital community had in the Orum

28

10

1    Property as of October 10, 2007, and its effect on the validity and priority of the

2    RFF lien.

3        **2.    The *In re Marriage of Neal* Presumption**

4        Moreover, the Court notes that *Summers* examined a transfer of real property

5    from a third party to spouses as joint tenants.  332 F.3d at 1242 ("This case requires

6    us to determine whether the requirements of California's transmutation statute must

7    be met when realty is transferred from a third party to spouses as joint tenants."

8    (citation omitted)).  The Ninth Circuit distinguished such a third-party transfer from

9    a transaction between spouses.  *Id.* at 1245 ("There simply was no interspousal

10   transaction requiring satisfaction of the statutory formalities.").

11       As noted above, on March 19, 2007, K. Eberts transferred the Orum Property

12   to herself and C. Eberts "as joint tenants, as husband and wife."  (ER 165).  Under

13   the rule articulated in *In re Marriage of Neal*, property converted into a joint

14   tenancy ***during*** marriage is deemed "acquired" during marriage and presumed to be

15   community property.  153 Cal. App. 3d 117, 123-25, 200 Cal. Rptr.  341 (1984),

16   *disapproved on other grounds in In re Marriage of Buol*, 39 Cal. 3d 751, 218 Cal.

17   Rptr. 31 (1985).

18       In *Neal*, the "Redwood City house [the relevant real property] was acquired

19   by Patricia as her separate property before the marriage, but a change in the form of

20   title to joint tenancy with Henry [her husband] took place during the marriage."  *Id.*

21   at 123.  The California Court of Appeal concluded that the "Redwood City house,

22   which Patricia owned as her separate property prior to marriage, was . . . converted

23   into community property when it was placed into joint tenancy."  *Id.* at 124-35 ("We

24   therefore conclude the change in the form of title of the Redwood City house caused

25   a presumption to arise . . . that Patricia made a gift of the house to the community,

26   and this presumption was rebuttable only by a writing.").

27       It is not clear from the record why the Bankruptcy Court applied the

28   presumption in *Summers* relating to a transfer of real property from a third party to

11

spouses, rather than that in *In re Marriage of Neal* relating to a conversion of separate property into a joint tenancy during marriage.  Furthermore, to the extent *In re Marriage of Neal* should apply in this case, it is unclear whether there is evidence to rebut this presumption.

Accordingly, the Bankruptcy Court's MOD and Judgment are REVERSED on this basis.  The Court remands this action for the Bankruptcy Court to make the factual findings necessary to determine (1) the Eberts marital community's pro tanto interest in the Orum Property as of October 10, 2007 under the *Moore/Marsden* rule, and (2) whether the Orum Property was community property as of October 10, 2007, based on the reasoning of *In re Marriage of Neal*.  On remand, the Bankruptcy Court also shall determine whether and how this characterization affects the validity and priority of the RFF lien.  *See, e.g.*, *Landmark Fence*, 2013 WL 866257, at *7 (reversing and remanding in part action to the bankruptcy court to make the factual findings necessary under the correct legal standard).

In making these factual findings, the Bankruptcy Court may, in its discretion, either use the existing record developed at trial or receive additional evidence.  *See, e.g.*, *In re YBA Nineteen, LLC*, Civil No. 13CV1326–WQH–RBB, 2013 WL 3288894, at *10 (S.D. Cal. June 28, 2013) ("On remand, the Bankruptcy Court shall reconsider . . . the existing record and any other new evidence the Bankruptcy Court allows the parties to present."); *In re Howe*, Nos. CV 07-03483 AHM, SV 02-11958-GM, 2008 WL 4184640, at *4 (C.D. Cal. Sept. 5, 2008) ("[A]lthough the BAP did not require the Bankruptcy Judge to receive more evidence on remand, it also did not prohibit it from doing so.").

## C.   **Mr. Tutor May Be Entitled to Equitable Subrogation Based on a Moral Obligation.**

As noted above, Mr. Tutor argues that he has a security interest in the Orum Property that is senior to any interest that RFF may have therein.  Mr. Tutor bases this argument on the legal principle of equitable subrogation and the facts that he

paid (or loaned K. Eberts) funds to satisfy the WAMU and Solesbee liens, which were senior to RFF's 10/10/07 Deed.

As the Bankruptcy Court stated, "[i]n order to be equitably subrogated to the rights of a secured creditor, an entity who pays such secured claim primarily owed by another must establish" the following (ER 30):

> . . . (1) Payment must have been made by the subrogee to protect his own interest.  (2) The subrogee must not have acted as a volunteer.  (3) The debt paid must be one for which the subrogee was not primarily liable. (4) The entire debt must have been paid.  (5) Subrogation must not work any injustice to the rights of others.

*Morgan Creek Residential v. Kemp*, 153 Cal. App. 4th 675, 690, 63 Cal. Rptr. 3d 232 (2007) (citation and internal quotation marks omitted); (ER 30).

"Applying this standard to the instant case," the Bankruptcy Court concluded that, "with respect to the first element, there is no evidence that Tutor paid off these secured claims against the [Orum] Property to protect his own interest."  (ER 31).

The Bankruptcy Court found that there was no evidence that Mr. Tutor was a guarantor or had any obligation with respect to the WAMU and Solesbee liens.  (*Id.*) Likewise, there was no evidence that Mr. "Tutor had a lien against the [Orum] Property junior" to the WAMU and Solesbee liens, "which would have been elevated in priority due to the payoff."  (*Id.* (Mr. "Tutor had no interest which would have been impacted by the payment of the[ WAMU and Solesbee] liens")).

It appears that Mr. Tutor "paid off" the Solesbee liens on January 2, 2008 (ER 2985), and the WAMU lien on April 24, 2008 (*see* ER 2991).  Again, specifically, Mr. Tutor argues that the WAMU and Solesbee liens were satisfied through funds that he **loaned** to K. Eberts.

According to Mr. Tutor, these loan "advance[s]" were included "along with other amounts that are not directly relevant to this litigation" in a promissory note for $8 million that K. Eberts executed and delivered to Mr. Tutor – *i.e.*, the Tutor/K. Eberts Note.  The Tutor/K. Eberts Note purports to be "secured by a mortgage of

1  real estate ('[the Orum] Property')."  (ER 2993).  Again, the Tutor/K. Eberts Note is

2  dated February 3, 2009.  (*Id.*)  C. Eberts filed for bankruptcy on February 5, 2009.

3          On this appeal, however, Mr. Tutor glosses over this factual timeline.  (*See,*

4  *e.g.*, Appellants' Opening Br. at 16 ("Those senior secured liens [*i.e.*, the WAMU

5  and Solesbee liens] were paid by Tutor through similarly secured loans to K.

6  Eberts."); *id.* at 19 (Mr. "Tutor lent nearly $6 million to K. Eberts to pay off [the

7  WAMU and Solesbee] liens.  That loan is secured by a deed of trust against the

8  [Orum] Property.")).

9          The Bankruptcy Court rightly concluded that there was no evidence that Mr.

10 Tutor had any interest in the Orum Property that would have been impacted by

11 satisfaction of the WAMU and Solesbee liens.  Instead, it seems clear that Mr. Tutor

12 directly paid off (apparently, through loans to K. Eberts) the WAMU and Solesbee

13 liens.  Then, a year later, K. Eberts executed the Tutor/K. Eberts Note, which

14 purported to grant Mr. Tutor a (supposedly senior) security interest in the Orum

15 Property on the basis of these payments/loans to K. Eberts.

16         Nevertheless, Mr. Tutor argues that a "person who lends money to pay off an

17 encumbrance on property and secures the loan with a deed of trust on that property

18 is not a volunteer for purposes of equitable subrogation."  *Mort v. United States*, 86

19 F.3d 890, 894 (9th Cir. 1996) (applying Nevada law).  Mr. Tutor argues further that

20 "[i]ssues such as whether the replacement secured creditor had a pre-existing lien on

21 the property or was obligated on the underlying debt and what was the status of the

22 existing debt against the property are irrelevant."  (Appellants' Reply Br. at 11).

23 Essentially, Mr. Tutor argues that, for purposes of equitable subrogation, it does not

24 matter if his security interest in the Orum Property arose more than a year after he

25 satisfied the WAMU and Solesbee liens, provided that he eventually acquired an

26 interest in the Orum Property.

27         This Court disagrees.  "Under California law, a party is considered a

28 volunteer if, in making a payment, it has no interest of its own to protect . . . ."

14

1  *Morgan Creek*, 153 Cal. App. 4th at 690 n.11.  When making the payments to

2  satisfy the WAMU and Solesbee liens, Mr. Tutor had no interest of his own to

3  protect in the Orum Property.  Mr. Tutor has offered no authority for the proposition

4  that a party retroactively can acquire such an interest for purposes of equitable

5  subrogation.

6         Nevertheless, at the hearing, Appellants' counsel argued that under *Mort*,

7  parties may be considered a volunteer if, and only "if, in making a payment, they

8  have no interest of their own to protect, they act without any obligation, legal or

9  moral, ***and*** they act without being requested to do so by the person liable on the

10  original obligation."  *Mort*, 86 F.3d at 894 (citing cases) (emphasis added).  As

11  discussed above, Mr. Tutor did not have any interest of his own to protect.  Nor does

12  Mr. Tutor contend that he had a legal obligation to pay off the WAMU and Solesbee

13  liens.  *In addition*, Mr. Tutor did not act at the request of the person liable on these

14  obligations – *i.e.*, C. Eberts.  The question, therefore, is whether Mr. Tutor was

15  under a moral obligation to pay off these obligations, and whether that alone can

16  support equitable subrogation in this case.

17         "Equitable subrogation is a state-law doctrine . . . ."  *Id.* at 893 (applying

18  Nevada law).  Under California law, "[p]ayment of the debt of another under a

19  moral obligation will support equitable subrogation; and the remedy will be applied

20  in all cases where demanded by the dictates of equity, good conscience, and public

21  policy."  *Employers Mut. Liab. Ins. Co. v. Pac. Indem. Co.*, 167 Cal. App. 2d 369,

22  380, 334 P.2d 658 (1959) (citation omitted).  The Bankruptcy Court apparently did

23  not consider this rule and made no factual findings in this regard.

24         Consequently, these are questions for the Bankruptcy Court.  On remand, the

25  Bankruptcy Court shall determine whether Mr. Tutor acted pursuant to a moral

26  obligation and whether equitable subrogation is appropriate under the "dictates of

27  equity, good conscience, and public policy."  In making this determination, the

28  Bankruptcy Court may, in its discretion, either use the existing record developed at

1    trial or receive additional evidence.  *See, e.g.*, *In re YBA Nineteen*, 2013 WL
2    3288894, at *10.

3         Accordingly, the Bankruptcy Court's MOD and Judgment are REVERSED
4    on this basis.

5    **D.    On Remand, the Bankruptcy Court Shall Determine K. Eberts's Rights**
6         **of Subrogation, Contribution and/or Reimbursement, if Any.**

7         Given the Court's conclusion above – *i.e.*, that as of October 10, 2007, the
8    Orum Property was, at least in part, community property – the Bankruptcy Court
9    shall determine on remand K. Eberts's rights of subrogation, contribution or
10   reimbursement, if any.  Here are the relevant issues:

11        ***First***, K. Eberts argues that ***she*** should be entitled to equitable subrogation
12   because she paid off the WAMU and Solesbee liens with the funds borrowed from
13   Mr. Tutor.  This argument alone seems to demonstrate that Mr. Tutor is not entitled
14   to equitable subrogation.  To the extent that Mr. Tutor and K. Eberts now attempt to
15   argue that K. Eberts paid off the WAMU and Solesbee liens – with funds borrowed
16   from Mr. Tutor – it is clear that Mr. Tutor did not even pay a secured claim.  Indeed,
17   this Court does not see how both Mr. Tutor (loans) and K. Eberts (payments from
18   those loans) could be equitably subrogated to the senior position of the WAMU and
19   Solesbee liens.

20        ***Second***, the Court takes exception with K. Eberts's suggestion that the
21   Bankruptcy Court "failed to address" her subrogation rights.  Regardless whether
22   this issue was preserved for appeal, the record demonstrates that K. Eberts did not
23   advance this argument at trial.  The Bankruptcy Court's MOD and Judgment do not
24   even address the question whether K. Eberts – rather than Mr. Tutor – should be
25   entitled to equitable subrogation.

26        Instead, it appears that Mr. Tutor and K. Eberts now believe that the better
27   argument is that K. Eberts (rather than Mr. Tutor) should be equitably subrogated to
28   the senior position of the WAMU and Solesbee liens.  If Mr. Tutor and K. Eberts

16

1  thought that the Bankruptcy Court had "failed to address" these alleged rights, then

2  they could have filed a post-trial motion to that effect – as they did with respect to

3  the *Stern v. Marshall* issue.

4       Specifically, RFF argues that K. Eberts raised this issue for the first time on

5  appeal.  K. Eberts argues that this issue was identified in the pretrial conference

6  order (ER 177) and "fully litigated."  ***As a threshold matter***, the Bankruptcy Court

7  first shall determine whether this claim has been preserved in the case.

8       ***Third***, K. Eberts's argument with respect to contribution rights appears to be

9  based on the supposition that, after December 21, 2007 (the date of the Eberts'

10  Postnuptial Agreement), the Orum Property was held between K. and C. Eberts as

11  tenants in common.  The Bankruptcy Court rightly rejected this factual assertion.

12  (ER 29 ("Rather, K. Eberts became the sole owner of the [Orum] Property, and

13  Debtor was left with no ownership interest.")).

14       Alternatively, K. Eberts now appears to argue that she has a contribution right

15  regardless of the form in which the Orum Property was held after December 21,

16  2007.  This determination will depend on the extent of the Eberts marital

17  community's interest in the Orum Property as of October 10, 2007.  Furthermore,

18  this determination will depend on the rights of the Eberts marital community and K.

19  Eberts herself as against the third-party creditor, RFF.

20       ***Fourth***, on remand, the Bankruptcy Court shall make the predicate

21  determination whether K. Eberts actually made any payment(s) that would entitle

22  her to subrogation/contribution/reimbursement.  Specifically, did Mr. Tutor make

23  payments to satisfy the WAMU and Solesbee liens, or did K. Eberts make these

24  payments with funds borrowed from Mr. Tutor?

25       Therefore, the determinative legal question – assuming that K. Eberts made

26  the relevant payments – is as follows:  What are a non-debtor spouse's rights to

27  subrogation/contribution/reimbursement when that non-debtor spouse pays off liens,

28  which attached when the subject property was either community property (*In re*

17

1  *Marriage of Neal*) or separate property held jointly in which the marital community

2  had taken an interest (*Moore/Marsden*), when the non-debtor spouse pays off those

3  liens after that subject property has been transferred to her and is held as her own

4  separate property?

5        This determination is derivative of the community property issue discussed

6  above.  Accordingly, the Court remands this action for the Bankruptcy Court to

7  make the factual findings necessary to determine K. Eberts's

8  subrogation/contribution/reimbursement rights, if any.  Again, in making these

9  factual findings, the Bankruptcy Court may, in its discretion, either use the existing

10  record developed at trial or receive additional evidence.  *See, e.g.*, *In re YBA*

11  *Nineteen*, 2013 WL 3288894, at *10.

### V. <u>CONCLUSION</u>

13        For the reasons stated above, the Court AFFIRMS in part and REVERSES

14  and REMANDS in part the Bankruptcy Court's MOD and Judgment.

15        IT IS SO ORDERED.

18  DATED:  July 10, 2013.            _____

19                        MICHAEL W. FITZGERALD

                      United States District Judge